944 F.2d 904
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
HYATT HOTEL CORPORATION d/b/a Hyatt Regency Memphis, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 Nos. 89-6407, 90-5697.
 United States Court of Appeals, Sixth Circuit.
 Sept. 6, 1991.
 
 1
 Before DAVID A. NELSON and SUHRHEINRICH, Circuit Judges, and HACKETT, District Judge.*
 
 JUDGMENT
 
 2
 THIS CAUSE came on to be heard upon a petition filed by Hyatt Hotel Corporation d/b/a Hyatt Regency Memphis to review an order of the National Labor Relations Board issued against said Petitioner, its officers, agents, successors, and assigns, on August 25, 1989, and upon a cross-application filed by the National Labor Relations Board to enforce said Order. The Court heard argument of respective counsel on February 11, 1991, and has considered the briefs and transcript of record filed in this cause. On July 22, 1991, the Court, being fully advised in the premises, handed down its opinion granting enforcement of the Board's Order. In conformity therewith, it is hereby
 
 
 3
 ORDERED AND ADJUDGED by the Court that Petitioner, Hyatt Hotel Corporation d/b/a Hyatt Regency Memphis, Memphis, Tennessee, its officers, agents, successors, and assigns, shall:
 
 1. Cease and desist from:
 
 4
 (a) Interfering with, restraining, and coercing employees in the exercise of the rights guaranteed them by Section 7 of the National Labor Relations Act (hereinafter called the Act) in violation of Section 8(a)(1) of the Act by telling its employees it was destroying all their written warnings and changing its procedure of access to management to one of open door to the general manager because of the union organizing campaign; by interrogating employees about the Union; by promising its employees improved working conditions because of the Union's campaign; by threatening its employees with detrimental changes in working conditions if they selected the Union as their bargaining representative; by threatening its employees with loss of benefits if the Union was selected; by telling its employees they they would not receive planned pay increases because of the Union; by threatening employees with discharge for offenses that previously involved no disciplinary action if the employees selected the Union; by linking employee awards and pay raises with its suggestion that its employees vote against the Union; by threatening its employees with discharge if they voted the Union in; by polling its employees in group meetings as to their union feelings; by threatening an employee that a union belt buckle would get the employee into trouble; and by requiring its employees to remove union buttons from their clothing.
 
 
 5
 (b) Retaliating against, discharging, and thereafter failing and refusing to reinstate its employees, and issuing written warnings to employees and more stringently enforcing its time sheet rules, because of the employees' concerted or union activities, or participation in NLRB procedures, or because its employees selected the Union as their bargaining representative or because of unlawful and unilateral changes in its employees' working conditions.
 
 
 6
 (c) Refusing to bargain with Highway and Local Motor Freight Employees Local Union No. 667, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO by unilaterally discontinuing its wage adjustment and merit and longevity wage increase practices for unit employees and its practice of serving breakfast to employees in the bargaining unit, or by unilaterally changing their working hours or instituting and implementing more stringent enforcement of its sign-in/sign-out rules against them. The appropriate unit is:
 
 
 7
 All banquet bartenders, banquet captains, banquet cooks, banquet housekeepers, banquet house person [sic] supervisors, bell attendants, bartenders, beverage-waiters, beverage waitresses, bakers, bakers' helpers, breakfast cooks, butchers, bus persons, cafeteria food servers, day stewards, door attendants, food and beverage cashiers, general utility employees, head bartenders, host/hostesses, housekeepers, house persons, [sic] kitchen expediters, linen room attendants, line cooks, maintenance engineers I, II, and III, night chefs, night pantry cooks, night cooks, night stewards, night bell attendants, PBX operators, pool attendants, pantry workers, pantry cooks, salad bar attendants, secretary to the chef/food preparation, secretary to the banquet manager, store room clerk, van drivers, restaurant waiters, restaurant waitresses, banquet waiters, banquet waitresses, room service waiters, room service waitresses, banquet chef and floor supervisor employed by the Employer at its Memphis, Tennessee, location, excluding all supervisors as defined in the Act.
 
 
 8
 (d) In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the National Labor Relations Act (hereinafter called the Act).
 
 
 9
 2. Take the following affirmative action which the Board has found necessary to effectuate the policies of the Act:
 
 
 10
 (a) Offer immediate and full reinstatement to Levy Harrison, Ruthie Myles, Linda Shirley, Terry Seymour, Timothy Brooks, Bryant Gibbs, Phillip Valentine, Nate Gorman, James Gorman, Mozelle Payne, Andrew Ryan, and Stan Harris to their former positions, or, if those positions no longer exist, to substantially equivalent positions without prejudice to their seniority or other rights and privileges, and make them whole for any loss of earnings they may have suffered as a result of the discrimination against them in the manner set forth in the remedy section of the Board's decision and remove from their files any reference to their discharges and the unlawful warning to Myles. Notify all the above-named employees in writing that this has been done and that evidence of their unlawful discharges and warning will not be used as a basis for further personnel actions against them.
 
 
 11
 (b) Notify and give the Union an opportunity to bargain about any changes in the unit employees' terms and conditions of employment, including the more stringent enforcement of its sign-in/sign-out rules concerning those employees, changing their working hours, and discontinuing as to them its wage adjustment and merit and longevity increase practices, and its practice of serving them breakfast.
 
 
 12
 (c) Rescind the more stringent enforcement policy concerning the sign-in/sign-out rules for unit employees.
 
 
 13
 (d) On request from the Union, reinstitute its wage adjustment and merit and longevity wage increase practices for unit employees, and its practice of serving them breakfast.
 
 
 14
 (e) On request from the Union, reinstate the working hours arrangement in the housekeeping department as it existed on September 9, 1981.
 
 
 15
 (f) Make all current and former bargaining unit employees whole for any loss of earnings suffered by the Respondent's unlawful discontinuation of its wage adjustment plan, including earnings lost by employees being deprived of longevity increases, merit increases, and/or semiannual wage adjustments in the manner set forth in the remedy section of the Board's decision.
 
 
 16
 (g) Preserve and, on request, make available to the Board or its agents for examination and copying, all payroll records, social security payment records, timecards, personnel records and reports, and all other records necessary to analyze the amount of backpay due under the terms of this Judgment.
 
 
 17
 (h) Post at its place of business in Memphis, Tennessee, copies of the attached notice marked "Appendix." Copies of the notice, on forms provided by the Regional Director for Region 26 of the National Labor Relations Board (Memphis, Tennessee), after being signed by the Petitioner's authorized representative, shall be posted by the Petitioner immediately upon receipt and maintained for 60 consecutive days in conspicuous places including all places where notices to employees are customarily posted. Reasonable steps shall be taken by the Petitioner to ensure that the notices are not altered, defaced, or covered by any other material.
 
 
 18
 (i) Notify the said Regional Director, in writing, within 20 days from the date of this Judgment, what steps the Petitioner has taken to comply.
 
 
 19
 It is further ORDERED AND ADJUDGED by the Court that the case is remanded to the Board for further proceedings.
 
 APPENDIX
 NOTICE TO EMPLOYEES
 
 20
 POSTED PURSUANT TO A JUDGMENT OF THE UNITED STATES COURT OF
 
 
 21
 APPEALS ENFORCING AN ORDER OF THE NATIONAL LABOR
 
 RELATIONS BOARD
 An Agency of the United States Government
 
 22
 The National Labor Relations Board has found that we violated the National Labor Relations Act and has ordered us to post and abide by this notice.
 
 
 23
 Section 7 of the Act gives employees these rights.
 
 To organize
 To form, join, or assist any union
 
 24
 To bargain collectively through representatives of their own choice
 
 
 25
 To act together for other mutual aid or protection
 
 
 26
 To choose not to engage in any of these protected concerted activities.
 
 
 27
 WE WILL NOT impose more onerous and rigorous terms and conditions of employment on our employees by more stringently enforcing our timesheet sign-in/sign-out rules because our employees have selected Highway and Local Motor Freight Employees Local Union No. 667, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO as their collective-bargaining representative.
 
 
 28
 WE WILL NOT retaliate against our employees because they support the Union or participate in NLRB-conducted election procedures.
 
 
 29
 WE WILL NOT promise to destroy our employees' warning notices (communications) in an effort to defeat the Union.
 
 
 30
 WE WILL NOT promise that our employees have an open door to the Hotel's general manager in an effort to defeat the Union.
 
 
 31
 WE WILL NOT coercively interrogate our employees about their union sentiments and activities.
 
 
 32
 WE WILL NOT threaten our employees that they will get into trouble by wearing a "Teamsters belt buckle" and WE WILL NOT prohibit our employees from wearing union buttons NOR WILL WE direct our employees to remove union buttons from their clothing.
 
 
 33
 WE WILL NOT threaten our employees with detrimental changes in working conditions if they select the Union.
 
 
 34
 WE WILL NOT threaten our employees with a loss of benefits and privileges if they select the Union as their bargaining representative.
 
 
 35
 WE WILL NOT coerce or threaten our employees by stating that they are being deprived of wage increases because of the Union or because of collective bargaining.
 
 
 36
 WE WILL NOT associate our granting employee awards including the employee-of-the-month award, with our desire to defeat the Union, in order to illustrate that favors could be granted to those that oppose the Union.
 
 
 37
 WE WILL NOT threaten our employees with discharge for offenses not previously punishable by discharge, if they select the Union as their bargaining representative.
 
 
 38
 WE WILL NOT threaten our employees with discharge or with kicking them out the door, if they vote for the Union.
 
 
 39
 WE WILL NOT poll our employees in open meetings on their feelings about the Union.
 
 
 40
 WE WILL NOT discharge our employees, or take any other reprisals against our employees, including disciplinary warnings, because they join, support or engage in activities on behalf of Highway and Local Motor Freight Employees Local Union No. 667, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO or any other labor organization, or as a result of changes in working rules without first negotiating with our employees' bargaining representatives about those changes.
 
 
 41
 WE WILL NOT refuse to bargain with the Union by unilaterally discontinuing our wage adjustment and merit and longevity wage increase practices for unit employees, and our practice of serving breakfast to employees in the bargaining unit, or by unilaterally changing their working hours or instituting and implementing more stringent enforcement of our sign-in/sign-out rules against them.
 
 
 42
 WE WILL NOT in any like or related manner interfere with, restrain, or coerce you in the exercise of the rights guaranteed you by Section 7 of the Act.
 
 
 43
 WE WILL bargain with Highway and Local Motor Freight Employees Local Union No. 667, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO by notifying and giving that labor organization an opportunity to bargain about any changes in our unit employees' terms and conditions of employment, including the more stringent enforcement of our sign-in/sign-out rules concerning those employees, changing their working hours, and discontinuing as to them our wage adjustment and merit and longevity wage increase practices and our practice of serving them breakfast. The appropriate unit is:
 
 
 44
 All banquet bartenders, banquet captains, banquet cooks, banquet housepersons, banquet houseperson supervisors, bell attendants, bartenders, beverage waiters, beverage waitresses, bakers, bakers' helpers, breakfast cooks, butchers, bus persons, cafeteria food servers, day stewards, door attendants, food and beverage cashiers, general utility employees, head bartenders, host/hostesses, housekeepers, house persons, kitchen expediters, linen room attendants, line cooks, maintenance engineers I, II, and III, night chefs, night pantry cooks, night cooks, night stewards, night bell attendants, PBX operators, pool attendants, pantry workers, pantry cooks, salad bar attendants, secretary to the chef/food preparation, secretary to the banquets manager, store room clerk, van drivers, restaurant waiters, restaurant waitresses, banquet waiters, banquet waitresses, room service waiters, room service waitresses, banquet chef and floor supervisor employed by the Employer at its Memphis, Tennessee, location, excluding all supervisors as defined in the Act.
 
 
 45
 WE WILL rescind the more stringent enforcement policy concerning the sign-in/sign-out rules for unit employees.
 
 
 46
 WE WILL, on request from the Union, reinstate our prior wage adjustment and merit and longevity wage increase practices for unit employees and our practice of serving them breakfast.
 
 
 47
 WE WILL make whole all employees and former employees in the unit for all earnings lost as a result of our unlawful discontinuation of the wage adjustment and merit and longevity pay increase practices that were in effect on and before September 9, 1981, with interest.
 
 
 48
 WE WILL, on request from the Union, reinstate the working hours arrangement in the housekeeping department as it existed on September 9, 1981.
 
 
 49
 WE WILL offer immediate and full reinstatement to Levy Harrison, Ruthie Myles, Linda Shirley, Terry Seymour, Timothy Brooks, Bryant Gibbs, Phillip Valentine, Nate Gorman, James Gorman, Mozelle Payne, Andrew Ryan, and Stan Harris to their former jobs, or, if such positions no longer exist, to substantially equivalent positions, with full seniority and all other rights and privileges.
 
 
 50
 WE WILL make Levy Harrison, Ruthie Myles, Linda Shirley, Terry Seymour, Timothy Brooks, Bryant Gibbs, Phillip Valentine, Nate Gorman, James Gorman, Mozelle Payne, Andrew Ryan, and Stan Harris whole for any loss of earnings they may have suffered by reason of our discrimination against them, with interest.
 
 
 51
 WE WILL remove from our records any reference to the unlawful discharges of the above-named employees and WE WILL notify them in writing that our unlawful conduct will not be used as a basis for further personnel action.
 
 
 52
 WE WILL remove from our records the disciplinary warning issued Ruthie Myles, and WE WILL notify her in writing that our unlawful conduct will not be used as a basis for further personnel action.
 
 
 53
 HYATT HOTELS CORPORATION, d/b/a HYATT REGENCY MEMPHIS
 
 
 54
 (Employer)
 
 
 55
 Dated __________ By ________________________ (Representative)
 
 
 56
 (Title)
 
 
 57
 This is an official notice and must not be defaced by anyone.
 
 
 58
 This notice must remain posted for 60 consecutive days from the date of posting and must not be altered, defaced, or covered by any other material. Any questions concerning this notice or compliance with its provisions may be directed to the Board's Office, 1407 Union Avenue, P.O. Box 41559, Memphis, Tennessee 38174-1559, Telephone 901-521-2687.
 
 
 
 *
 The Honorable Barbara K. Hackett, United States District Judge for the Eastern District of Michigan, sitting by designation